The Chancellor.
This is an ordinary bill upon a mortgage for the foreclosure and sale of mortgaged premises. The bond and mortgage bear date the first day of June, 1840, and are made by Aaron B. Meeker and wife to Aaron L. Middlebrook, to secure the payment of $500. On the twenty-first day of the same month of June, they were duly assigned by Middlebrook to Bobert Griffith. On the tenth day of October, 1842, Bobert Griffith assigned them to the complainant. The equity of redemption of Aaron B. Meeker in the premises was subsequently sold upon a judgment against Meeker, and was conveyed by the sheriff to Enos Price, one of the defendants. Meeker and Price have put in their joint and several answer to the bill. They set up the defence of usury, which is thus stated in their answer. That whilst the said bond and mortgage were held by Griffith, he being anxious to receive the money which was then due to him thereon, applied to Meeker, shortly previous to the assignment to the complainant, for payment therefor, and threatened Meeker, who was then the owner of the equity of redemption in the mortgaged premises, that unless the money was paid without delay, he would take measures to *363 enforce the payment by legal proceedings; that Meeker thereupon applied to the complainant, and requested him to advance for, or loan to him, the said Meeker, the amount of money required to pay off the said bond and mortgage, and to take, as his security for the repayment of the same, with the lawful interest which should accrue thereon, an assignment from Griffith of the bond and mortgage, to which request of Meeker the complainant declared he was willing to accede, provided Meeker would pay him the sum of thirty dollars for making said advance or loan; and that it was thereupon corruptly and usuriously, against the statute, &e., agreed, by and between Meeker and the complainant, that the complainant would advance to said Meeker the sum of $500, and should receive, over and above the lawful interest therefor, the said sum of thirty dollars for the forbearance and giving day of payment of the said sum of $500; and to secure the payment, and the lawful interest which should accrue thereon from the time when the money should be loaned, or advanced, the said complainant should take an assignment from Griffith of the bond and mortgage; that in pursuance of the said agreement, the complainant advanced the money, and took the assignment; that Meeker, before said advance, or loan, was actually made, paid to the complainant the said sum of thirty dollars.
On the part of the complainant, it is proved that, at the time of the assignment to him, there was due on the bond and mortgage, for principal and interest, the sum of $510.80; that he paid to Robert Griffith that sum, and upon such payment received from Griffith the bond and mortgage, and the assignment of the same.
Aaron B. Meeker was examined as a witness, on the part of the defendants, under an order of the court. He is the only witness relied upon to prove the usury. He says, “ I applied to Mr. Donnington to take that mortgage, under the circumstances, that if he would take it, I would give him between thirty and thirty-five dollars — that he took out of a note he discounted; the note was Ralph H. *364 Pierson’s, for one hundred and thirty dollars. Mr. Donnington, for that note, gave me his own note for ninety-five dollars, at one month; Pierson’s note was for four months. I applied to Mr. Donnington to take the mortgage, because Mr. Griffith had commenced a foreclosure on the mortgage, and I wished to get it out of his hands. Mr. Donnington did get the bond and mortgage from Mr. Griffith; I cannot say how much money he paid for the bond and mortgage. I agreed to pay him interest for the money he should advance to take up the bond and mortgage at the rate of six per cent. Mr. Donnington did take a bonus of thirty or thirty-five dollars for lending this money to me; he seemed to hesitate for two or three days, until I made him this offer; this bonus was over and above the interest — it was a premium for lending the money. The amount of money Mr. Donnington was to advance was five hundred dollars.” He further says, on cross-examination, “ I did not pay Mr. Griffith any of the money he received on the assignment of the mortgage to Mr. Donnington. I gave Mr. Donnington the premium I have mentioned for the accommodation of his furnishing to Mr. Griffith the money for the bond and mortgage, and for discounting the note of Mr. Pierson for one hundred and thirty dollars.” And on re-examination, the witness says, “It was the understanding that Mr. Donnington lent me the money, and he was to take an assignment of the bond and mortgage as a security.” I have given all that the witness testified to as to the the usury.
¥e are to look at the position of this witness, and to regard his testimony with some grains of allowance, on account of the bias and partiality he evidently manifests for his co-defendant, Price, and his desire to sustain the defence set up by the answer. He speaks of his applying to the complainant for a loan of five hundred dollars, and that when the money should be loaned and advanced, then that the complainant should take an assignment of the bond and mortgage as his security. And again, “It was *365 ike understanding that Mr. Donnington lent me the money." It is evident that the witness endeavors to give a coloring to the transaction which is not consistent with the real facts of the case. He gives us the whole truth of the case in his cross-examination, when he says, “ I gave Mr. Donnington the premium I have mentioned for the accommodation of furnishing to Mr. Griffith the money for the bond and mortgage.” That is the fair import of his whole evidence.
If Meeker contracted with the complainant for a loan of five hundred dollars, and procured the assignment of the bond and mortgage to the complainant as security for the loan, then the security in the hands of the complainant would be vitiated, because they would be destined to enforce a contract which is usurious. Harrison v. Hannel, 5 Taunt. 780. But the complainant holds the bond and mortgage, not by virtue of any contract he made with Meeker, but by a contract he made with Griffith, and this latter, it is admitted, was not usurious. It is not true in fact that the complainant loaned the money to Meeker under a contract for a loan, and took the assignment of the bond and mortgage as his security for the loan. The contract between the complainant and Meeker was, that the complainant should pay to Griffith the amount due on the bond and mortgage, and for such advance, take an assignment of the securities — and the complainant did so.
But it is said — is not this an evasion of the statute? It is nothing more nor less than this: the complainant procured an assignment of the bond and mortgage by paying thirty-five dollars less than was due upon the face of them. Is that usury? It is a well established principle, that if a note or security is valid when made, no usurious contract afterwards between the parties or privies will affect its validity. If a bond is valid at the time it is made, no subsequent event can make it usurious. Ferrall v. Shaen, 1 Sound. 295, Williams’ note. The sale by one person, of the bond of another, bona fide made, at any rate of dis *366 count, however exorbitant, is not illegal. Ridgeway v. Brick, decided in this court July term, 1825. No subsequent taking, or agreement to take illegal interest, will invalidate a bond or other security originally free from corruption; and this has been the uniform construction given to the second section of the act against usury. Sloan v. Towers, 2 Green 510; Knight v. Putnam, 3 Pick. 184, and note 3, page 185, of same case.
It is clear then, upon well settled authority, that if the complainant had procured the assignment from Griffith, at a discount of thirty-five dollars on the principal and interest due on the securities, the assignment would not have been usurious. Noes it make any difference that, instead of receiving this bonus from Griffith, he received it from Meeker ? Suppose Meeker had paid Griffith, in addition to the legal interest, thirty-five dollars, in consideration of further forbearance in calling for the principal, it is admitted that such payment would not have tainted the securities with usury. There was a valid contract existing between Meeker and Griffith, and Meeker gave the complainant thirty-five dollars, as a bonus, for assuming the position of Griffith in the contract. The complainant then contracted with Griffith; and it is said that the contract made between the complainant and Griffith is vitiated by the agreement between the complainant and Meeker, which induced the complainant to take the assignment.
I think it is very clear that there is no usury in this transaction, and that the complainant is entitled to his decree.